## THE PEOPLE v. JOHN F. SIMPSON.

*Dying declarations— Wife-killing— Evidence of decedent's conduct—Conversations with arrested party—Disposition of parties—Identification.*

In a prosecution for murder the offer of dying declarations should be preceded by evidence that they were actually made in expectation of impending death; and this may be shown by the nature of injury,

by what the injured person said, or what physicians or attendants said in his hearing, by the evident state of his mind, etc. It is not essential that the injured person should have stated that they were made in that expectation, or that any person should have said in his presence that death must speedily follow.

Dying declarations are admissible even though others may not have thought the person making them would die, and even though death may not have followed for some time.

Where several witnesses testify to the same facts the court cannot single out a particular witness and instruct the jury what conclusion to come to if they do not believe him.

The prosecutor in a murder case cannot be confined to proving dying declarations made at one time if there were others made at other times and all were competent; nor can he be confined to proving what was said at one time where the statement was reduced to writing and signed at another.

Two women were walking together and one was fatally shot. In a prosecution for the murder the other testified that immediately after the shot was fired her companion exclaimed "My God, Simpson, you have shot me," and then turned slowly and clasped the next to the top board in the fence close by. Another witness testified that he lived a block distant on the opposite side of the street, and was in the house when he heard the shot; that he ran to the place and found a woman leaning against the fence; that he went over as quick as he could and said to her "Who shot you, madam?" and that she said it was John Simpson. *Held*, that these declarations of the injured person were admissible.

In the prosecution of a husband for the murder of his wife it was proper to show that for some time previously they had not lived peaceably together and that respondent had threatened to shoot or kill the deceased. But testimony as to alleged relations between the wife and third persons of questionable reputation are inadmissible where there is no pretence that the latter were guilty of the offence and they are not on trial.

Conversations between a policeman and a man arrested for murder are admissible in evidence where it does not appear that any undue influence was resorted to for the purpose of obtaining evidence from the accused, and it is shown that he was warned that his statements would be used against him.

In a prosecution for the murder of a woman by her husband questions to a witness as to how the husband had treated the wife within two years preceding were properly excluded where it appeared that witness had not seen them together in five years.

Evidence that a wife's general disposition was bitter and vindictive is inadmissible in the prosecution of her husband for her murder either

generally or for the purpose of affecting her dying declaration against him.

In a prosecution for murder questions as to the clothing worn by the respondent at the coroner's inquest are irrelevant in the absence of evidence that he had not changed his clothing.

Exceptions before judgment from the Recorder's Court of Detroit. Submitted April 25. Decided June 14.

INFORMATION for murder. Respondent was convicted. Exceptions overruled.

Attorney General *Jacob J. Van Riper* for the People. In the prosecution of a husband for the murder of his wife any evidence tending to show malice, ill will, the existence of hatred and a desire to do injury are within the rule that the previous relations of the parties may be shown: *Wellar v. People* 30 Mich. 22; *Dillin v. People* 8 Mich. 366; *People v. Potter* 5 Mich. 8; threats by defendant to kill his wife are admissible: Roscoe's Crim. Ev. 689; *Richard Mason's Case* Foster 132; 1 East P. C. 239; the admissions made by a prisoner to an officer are admissible if not made in fear of personal injury or hope of benefit: *Rex v. Thomas* 6 C. & P. 353; Tiffany's Cr. Law 534; the dying declarations of a murdered person may be put in evidence on the prosecution for the murder, if made with the belief that death is impending: Roscoe's Crim. Ev. 31; *People v. Knapp* 26 Mich. 116; *Hurd v. People* 25 Mich. 411; *Rex v. Foster* 6 C. & P. 325; *Com. v. M'Pike* 3 Cush. 181; *People v. Vernon* 35 Cal. 49; *People v. Morrigan* 29 Mich. 4; *Lambert v. People* 29 Mich. 71; *Durant v. People* 13 Mich. 351; *Brown v. People* 36 Mich. 203; *Hitchcock v. Burgett* 38 Mich. 501; *Cleveland v. Newsom* 45 Mich. 62; *Ulrich v. People* 39 Mich. 245.

*Chas. E. Miller* and *Geo. H. Prentis* for respondent. Dying declarations are not admissible if there is nothing to show that they were made in expectation of death (*People v. Olmstead* 30 Mich. 431) or intelligently: Whart. Crim. Ev. (8th ed.) § 300; their admission is not favored unless

other evidence is wanting: Vin. Ab. "Evidence" 38 A; *Rex v. Gay* 7 C. & P. 230; *Binns v. State* 46 Ind. 311; *Rex v. Bell* 5 C. & P. 162; *Reg. v. Christopher* 1 Den. C. C. 536; *State v. Bohan* 15 Kan. 407; and if made in any hope of recovery they cannot be used: *Rex. v. Fagent* 7 C. & P. 238; *State v. Center* 35 Vt. 378; *Reg. v. Megson* 9 C. & P. 418; *Rex v. Van Butchell* 3 C. & P. 631; *Reg. v. J nkins* 11 Cox C. C. 250; *Rex v. Crockett* 4 C. & P. 544; *Reg. v. Mooney* 5 Cox C. C. 318; *Reg. v. Qualter* 6 Cox C. C. 357; exclamations made by an injured person at the time he is hurt are not admissible in evidence unless they relate to the injury itself and not to its cause: *Field v. State* 57 Miss. 474: 10 Alb. L. J. 335; or if they are drawn out by questions and in the absence of the person doing the injury: *Reg. v. Bedingfield* Law Times, Dec. 27, 1879; evidence of the disposition or character of the deceased is admissible; 1 Taylor's Ev. § 325; *Reg. v. Rawton* 1 Whart. Cr. L. § 365; *State v. Elliott* 45 Ia. 486.

MARSTON, J. The respondent was convicted of murder in the first degree. The case comes up on exceptions before sentence. The first exceptions discussed by counsel relate to the admissibility of certain dying declarations, and it is claimed that this evidence was not competent because not made under the solemn belief of impending death.

It is incumbent upon the prosecution, before offering what is claimed to have been dying declarations, to show that they were made under a sense of impending death. It is not necessary to show that the injured party so stated at or about the time, or that any person in his or her presence and hearing said that death must speedily ensue.

The fact may be proved, like any other fact in the case and in the light of the existing and surrounding circumstances. The question is from the character and nature of the injury, whether slight, severe or necessarily mortal; from what was said, if anything, by the injured person, or by the physicians or attendants in her hearing; what evidently was the state of the injured person's mind at the

time the declarations were made. If the injured party had no hopes of recovery, and made the declarations under the impression that death was imminent, they are admissible, even though others may have thought differently and so expressed in her hearing, and even though death may not have ensued for some time thereafter. 1 Greenleaf's Ev. § 158, and note.

In this case there certainly was evidence from which the court below, under the ruling made, must have been satisfied that the deceased was under the impression that death was impending; and the case would require to be a very strong one to justify this Court, who did not see the witnesses, in arriving at a different conclusion. In this connection we may also refer to the error assigned upon the refusal of the court to instruct the jury that if they did not believe the testimony of Sarah Wilmot, the so-called declarations must be rejected.

Where facts and circumstances are testified to by several witnesses, no one witness can be singled out and the jury instructed what conclusion they must arrive at if they do not believe such witness to have testified truly. The real question is, has a particular fact been established, looking at all the testimony touching thereon, and the jury cannot be instructed to take the witnesses one by one and lay them one side or the other. It might be quite difficult to establish facts under the application of such a rule. The testimony of a single witness while standing alone may be highly improbable, and yet in the light of corroborating circumstances, the truthfulness thereof may become clear and convincing. Neither would the prosecution be confined to proving declarations made at one time, if made at more than one, and each otherwise competent, or to proving what was said at one time, because at another the statement was reduced to writing and signed. To so hold would be to compel the prosecutor to act at his peril, as, were all testified to, the jury might believe one and reject the others; and it would also put it in the power of the prosecuting officer to offer such as were unfavorable to the respondent, and

suppress, or compel the defendant to offer, those more favorable to him. It must of course appear that each declaration was made *in extremis*, but each is admissible when shown to have been thus made.

Exceptions were taken to the testimony of Lizzie Short and Anthony Trollope as to declarations made by the deceased at the time and shortly after she received the injury.

Lizzie Short was walking with the deceased at the time she was shot. She testified that "immediately after the shot was fired deceased exclaimed 'My God, Simpson, you have shot me,' and witness saw her turn slowly around and clasp the board next to the top one in the fence with her left hand; that witness turned immediately after the shooting, when she saw a short thick-set man dressed in dark clothes distant about forty feet running across the vacant lot." Trollope testified "that he lived a block distant from the corner in question on the opposite side of Leib street; that he was in the house when he heard the pistol-shot in question, and ran to the corner in question, whereupon he found a woman leaning against the fence;" that he went over as quick as he could and said to this woman, "Who shot you, madam?" She said it was John Simpson.

No possible doubt can arise as to the admissibility of the declaration made to Lizzie Short or in her hearing, and it is very evident that the question asked by Trollope and answer thereto, were within a very few minutes after the shooting and while the injured person was still leaning upon the fence as testified to by both these witnesses.

Were these declarations contemporaneous with the shooting, and so connected with injury as to illustrate its character? The declaration of a person wounded and bleeding, that the defendant had stabbed her, made immediately after the occurrence, though with such an interval of time as to allow her to go up stairs from her room to another room, was held admissible after her death as part of the *res gestœ*. *Com. v. M'Pike*, 3 Cush. 181. The present case resembles

very closely *Lambert v. People*, 29 Mich. 71, where parties came up within three minutes after a robbery, and the complaint then made was held admissible as a part of the *res gestæ*.

Seventy-nine exceptions were taken in this case. They relate mostly to rulings upon the admissibility of testimony. Most of them require little or no examination at our hands.

The respondent and deceased when living were husband and wife, and it was competent for the prosecution to show that for a reasonable time previous to this occurrence they did not live peaceably together, and that respondent had threatened to shoot or kill the deceased; and we discover nothing in the form of the questions asked the witness, Henry Simpson, as to a statement previously made by him, or to the witness Welch, whether respondent could have at a certain time been in certain rooms she had passed through and she not see him.

The questions asked for the purposes of eliciting testimony tending to show the relations that had existed between the deceased and certain third parties of questionable reputation were properly excluded. There was no pretence that these parties were guilty of the offence, and although such facts, had they been on trial, might have been shown to establish a motive, in the present case they were inadmissible.

The testimony of the Sergeant of Police Berger, giving a conversation had with the accused after his arrest, was admissible. It does not appear that any undue influence was resorted to, in order to obtain evidence from the respondent; on the contrary he was cautioned and warned to be careful, as his statements would be used against him.

The questions asked the witness Baxter as to the manner in which the deceased had treated the respondent within two years preceding the shooting were properly excluded and for the reason given, viz., that witness had not seen them together in five years. And the questions asked Nicholson and Thomas as to the general disposition of the deceased being bitter and vindictive were properly ruled out. The object of such evidence is not apparent; it would not tend

to show that respondent treated her kindly, or that he had not threatened her, or tend to show that he had no motive for injuring her. If such evidence would prove anything it would more likely establish the contrary. And such evidence would not be admissible as tending to affect her credibility for truth and veracity, and therefore likely to affect her declarations.

The questions asked as to the clothing worn by the respondent at the time of the coroner's inquest would have no tendency to prove that he was not the man who committed the offence, because not dressed as the witnesses testified the party was who fired the shot. No offer was made to show that he did not have opportunity to and did not change his clothing before the inquest was held, and bearing in mind the fact that parties about to commit a felony frequently disguise themselves for the very purpose, but little reliance could be placed upon such evidence standing alone.

The other exceptions worthy of consideration relate to the charge and refusals to charge. The court declined to give any of the requests separately, but incorporated such of them as were deemed proper in a connected form in his charge. We have carefully compared the requests made with the charge given, and find every request fairly included therein, except such parts of the eighth as asked for an acquittal in case the jury have doubts as to the testimony of certain witnesses. The eighth and ninth requests are somewhat peculiar in form and ambiguous, and the court clearly and distinctly charged that in case of reasonable doubt it was their duty to acquit; and that all the testimony must be carefully considered, reconciled if possible and weighed.

It would serve no useful purpose to here copy the requests and parts of the charge covering the same, inasmuch as we find such to be the fact, and this leaves no question of law open for discussion concerning the same.

The offence charged and of which the respondent has been found guilty, in view of the punishment attached thereto, is most serious, and we have in consequence thereof carefully examined the record and exceptions taken, to see

if any error had been committed to the respondent's prejudice, but have discovered none, and it must be certified accordingly, and that the case proceed to judgment.

COOLEY and CAMPBELL JJ. concurred.