PEOPLE *v.* FRITCH.

1. CRIMINAL LAW — MANSLAUGHTER — EXAMINATION OF JURORS — OTHER CHARGES.

In a prosecution for manslaughter, based on the charge that defendant committed an abortion upon a woman which resulted in her death, it was not prejudicial error for the prosecution, upon examination of the jurors, to question them as to whether they had heard or read about any other cases or charges pending against defendant.

2. SAME—TRIAL—WITNESSES — EXPLANATION OF DISCREPANCY IN TESTIMONY.

Where there was a discrepancy in the testimony of a witness between that given before the examining magistrate and that given upon the trial, the trial court was not in error in allowing the witness to explain such discrepancy.

3. SAME—DYING DECLARATIONS—ADMISSIBILITY.

Where the testimony established the fact that declarant was *in extremis* when a statement was made by her and was made under a sense and conviction of approaching death, and was such a statement of facts as she could have sworn to as a witness, it was properly received in evidence as a dying declaration.

4. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—ABUSE OF DISCRETION.

The denial of a motion for a new trial on the ground of newly-discovered evidence based upon an affidavit that defendant was treating affiant at the time the offense was charged to have been committed, which was but cumulative of testimony given in his defense, and which was met by a counter affidavit of affiant's landlady denying the material facts therein set up, *held*, not an abuse of his discretion by the trial judge.

Error to recorder's court of Detroit; Wilkins (Charles T.), J. Submitted April 16, 1920. (Docket No. 114.) Decided June 7, 1920.

George A. Fritch was convicted of manslaughter,

On admissibility of dying declarations made with sense of impending death, see note in 56 L. R. A. 382, 6 B. R. C. 238.

and sentenced to imprisonment for not less than 1 nor more than 15 years in the branch of the State prison at Marquette. Affirmed.

*Eugene L. Mistersky* and *James A. Murtha* (*John H. Dohrman*, of counsel), for appellant.

*Matthew H. Bishop*, Prosecuting Attorney, and *Allan P. Cox*, Assistant Prosecuting Attorney, for the people.

FELLOWS, J. The defendant was convicted of the crime of manslaughter and sentenced to Marquette prison for from 1 to 15 years with a recommendation of 15 years. He reviews such conviction upon this writ of error. The claim of the prosecution supported by the testimony may be briefly stated as follows: Victoria Kolendo was the wife of John Kolendo. They were Polish people and lived at 2334 Russell street, Detroit. They had two children. Mrs. Kolendo was pregnant. She had obtained the location of the defendant's office from some lady who gave her a slip of paper with the address upon it, and on September 20, 1918, she and her husband went to the office about 10 o'clock in the forenoon for the purpose of having an abortion performed. Her husband had attempted to dissuade her from this step, but she had insisted that she would go alone when he was at work unless he went with her and he consented to accompany her. Mr. Kolendo testifies to being present when the operation was performed and identifies the defendant as the man who performed it. A rubber tube then inserted by the defendant and afterwards preserved was also identified by him. Septicemia developed and Mrs. Kolendo was taken to the Samaritan hospital where she died October 8th. The defendant denies performing the operation, denies that he ever saw Mr. Kolendo until after his arrest, denies having seen either

him or Mrs. Kolendo at the time alleged. He insists that he was not in his office any forenoons during the month of September, that he had no office hours in the forenoons, and produces two employees who corroborate his claim in this regard.

Upon the examination of jurors the following question was asked: "Have you heard or read about any other cases or charges pending against Dr. Fritch?" The juror answered "No." It is insisted that this was prejudicial error in that it conveyed to the jury the impression that defendant had committed other crimes. We cannot agree with counsel that the asking of this question worked the result claimed or constituted prejudicial error. While the general rule is that evidence of the commission of other crimes may not be received, and none was offered or received in this case, and while a less objectionable form of question could have been propounded, it is a matter of general practice to permit the prospective jurors to be interrogated as to what they have read in the newspapers and what they have heard which would tend to disqualify them as jurors and subject them to challenge either for cause or peremptorily. It is important to both the prosecution and the defendant that a fair jury be obtained, one made up of men who had not prejudged the case, who had not made up their minds. To secure this end there must be some latitude permitted in the examination of prospective jurors. We are not impressed that a latitude was indulged in in the instant case which resulted in prejudicial error.

Upon the cross-examination of Mr. Kolendo he was interrogated with reference to his testimony given before the examining magistrate and some discrepancies were developed. Upon re-examination the prosecution was permitted for the purpose of showing his mental state when examined before the magistrate to show by him that shortly before giving that testimony

he had lost his children. This is assigned as error. Discrepancies between the testimony given on two occasions having appeared it would be a reproach upon our judicial system if the witness should be precluded from explaining such discrepancies or the reason therefor. The witness was an ignorant foreigner and used the English language somewhat indifferently. That the recent death of his two children following that of his wife left him depressed we think goes without saying. It was eminently proper to permit the people to show that when laboring under this mental stress he gave his testimony before the magistrate. Taking the record as a whole, we are not impressed that the discrepancies were important. Defendant's counsel, however, so regarded them and seemed to have made much of them. Under these circumstances it was highly proper to permit this testimony on reexamination.

Four days before her death Mrs. Kolendo made a statement at the hospital which was offered and received as a dying declaration. The correctness of the ruling admitting this statement presents the principal question in the case. In the case of *People* v. *Olmstead,* 30 Mich. 431, this court said:

"Dying declarations, as is well settled, are neither more nor less than statements of material facts concerning the cause and circumstances of homicide, made by the victim under the solemn belief of impending death, the effect of which on the mind is regarded as equivalent to the sanction of an oath. They are substitutes for sworn testimony, and must be such narrative statements as a witness might properly give on the stand if living."

And in the recent case of *People* v. *Christmas,* 181 Mich. 634, Mr. Justice BROOKE, speaking for the court, said:

"It is elementary that before a statement made by the deceased shall be received as his dying declara-

tion, a preliminary investigation shall be made by the court to determine its admissibility as such. Through this investigation the court must be satisfied that the declarant was in fact *in extremis* at the time the declaration was made, and that he made it under a sense of impending death. See 2 Wigmore on Evidence, § 1451, and cases cited; 4 Encyclopedia of Evidence, p. 947, and cases cited. This court has held that it is proper to allow evidence as to the circumstances under which the dying declaration was taken to show whether it was really taken when the declarant was under the conviction of approaching and inevitable death, and evidence of this should usually be given in advance of proof of the declaration itself."

Both counsel cite the *Christmas Case*, recognize the correctness of the rule there laid down and each insists upon application thereof to the instant case.

Preliminary to receiving the statement certain testimony was given. The attending nurse who was present when the statement was made spoke both English and Polish and acted as interpreter. She swears that she correctly translated the questions and answers. She testifies to Mrs. Kolendo's condition, that she would relapse into a state of coma from which she would revive or "come to," and that the statement was taken when she revived from one of these relapses. The stenographer who took and transcribed the statement also understood the Polish language. He testifies that Mrs. Kolendo was in a precarious condition when he arrived at the hospital. Before taking her statement she was asked if she thought she was going to get well and answered, "No." She said if any one bothered her she would die right away, that she was afraid she was going to die, and she had little kids, and she was afraid she was going to die and leave the children. Her statement had to do with the performance of the illegal operation and corroborated her husband's testimony. It was a statement of facts which she could have sworn to as a witness. After

making the statement she was asked, "How do you feel now," and replied, "All right." She also then stated that she was afraid she was going to die and leave the kids.

We are clearly of the opinion that the prosecution fully met the requirements of the rule laid down by this court in the *Christmas Case.* The testimony establishes that the declarant was *in extremis* and that the statement was made under a sense and conviction of approaching and inevitable death. Under such circumstances every motive to falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth. The court did not err in receiving this statement as a dying declaration. See *People* v. *Knapp,* 26 Mich. 112; *Hurd* v. *People,* 25 Mich. 405; *People* v. *Lonsdale,* 122 Mich. 388; *People* v. *Simpson,* 48 Mich. 474; *People* v. *Beverly,* 108 Mich. 509; *People* v. *Weaver,* 108 Mich. 649; 1 R. C. L. pp. 527-550.

The testimony of the physicians who performed the *post mortem* establishes that deceased was pregnant at the time the operation was performed and the trial judge did not err in refusing to direct a verdict.

Defendant made a motion for a new trial on the ground of newly-discovered evidence based on the affidavit of a man named Walker to the effect that defendant was engaged in treating him during the entire forenoon of September 20th in reducing a hernia. This affidavit was met by the prosecution with one by the landlady with whom Walker roomed denying the material facts set up in Walker's affidavit. Walker's affidavit was cumulative of the testimony given by defendant's employees that he was not at the office forenoons during that month and on the day in question. It is difficult to comprehend that defendant in preparing for his trial entirely forgot this transaction. The facts set up in the affidavit were denied

in the affidavit of the landlady. The trial judge did not abuse his discretion in denying the motion for a new trial. The case was very carefully tried by the prosecution.

The charge of the trial judge was eminently fair to the defendant; practically all of his requests were given. He was defended by able counsel and had a fair trial. We find no occasion upon this record to disturb his conviction. It is affirmed.

MOORE, C. J., and STEERE, BROOKE, STONE, and BIRD, JJ., concurred. CLARK and SHARPE, JJ., did not sit.