PEOPLE *v.* BRADFIELD.

1. HOMICIDE—MANSLAUGHTER BY ABORTION—DYING DECLARATION—
   BELIEF IN IMMINENCE OF DEATH—EVIDENCE.

In prosecution for manslaughter by abortion, evidence produced
in advance of receiving alleged dying declaration that such
declaration was made under the belief that death was im-
pending was properly received (Act No. 328, § 14, Pub. Acts
1931).

2. SAME—MANSLAUGHTER BY ABORTION—DYING DECLARATION—
   DECLARANT'S BELIEF IN IMMINENCE OF DEATH—QUESTION FOR
   JURY.

In prosecution for manslaughter by abortion, where decedent's
mother had testified that her daughter had stated she
could not die without confessing what she had done, that de-
ceased then stated that she had had a criminal operation which
had been performed by defendant, that witness's son had tried
to cheer her daughter up by telling her that she would be
home in a few days but that deceased stated she would never
be able to go home again, the determination of the question
of declarant's belief in impending death was properly sub-
mitted to jury (Act No. 328, § 4, Pub. Acts 1931).

3. SAME—MANSLAUGHTER BY ABORTION—DYING DECLARATION—
   STATEMENT OF FACT.

In prosecution for manslaughter by abortion, dying declaration
of deceased that she had had a criminal operation and that
defendant performed it was not, under the circumstances,
merely an opinion or conclusion, but a statement of fact (Act
No. 328, § 4, Pub. Acts 1931).

CHANDLER, C. J., and WIEST, J., dissenting.

Appeal from Ingham; Carr (Leland W.), J. Sub-
mitted October 16, 1941. (Docket No. 92, Calendar
No. 41,661.) Decided January 5, 1942.

John D. Bradfield was convicted of manslaughter
by abortion. Affirmed.

*Linsey, Shivel, Phelps & Vander Wal* and *Pierce, Planck & Ramsey,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Richard B. Foster,* Prosecuting Attorney, for the people.

BOYLES, J. Defendant, a practicing physician, appeals from a conviction and sentence for manslaughter by abortion. (Act No. 328, chap. 3, § 14, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115-14, Stat. Ann. § 28.204]). The only question raised is as to the admissibility of an alleged dying declaration or, more specifically, whether there was sufficient evidence to submit to the jury the question of the belief of the deceased declarant in the imminence of death.

The record establishes that during the latter part of November, 1940, a Mr. and Mrs. Hunt, residents of Lansing, went to see defendant in Portland and made arrangements for him to procure a miscarriage; that an appointment was made and at the appointed time, Monday, December 2, 1940, Mr. and Mrs. Hunt and her married sister went to the doctor's office in Portland. After all other patients had left, Mrs. Hunt was taken into an operating room adjoining the room where Mr. Hunt and the sister remained seated but in their hearing. The unpleasant details of the operation were brought out at length in the testimony of Mr. Hunt and his wife's sister. Later, the same evening, Mrs. Hunt returned to the home of her sister in Lansing, went to bed, and, on Wednesday, two days later, a miscarriage occurred. The patient grew worse and, on Friday, a physician was called, and Mrs. Hunt was removed to a hospital where she died three days later. An autopsy revealed that an operation by instruments had procured a miscarriage.

Defendant testified in his own behalf and admitted the truth of the essential facts, including the use of instruments, but denied performing an operation to procure an abortion.

Without the dying declaration, the record clearly leaves no doubt as to the guilt of the defendant.

The dying declaration consists of statements alleged to have been made by Mrs. Hunt to her mother in the hospital at about 11 o'clock on the day before her death. At that time Mrs. Hunt was very ill. The testimony showed:

"She was throwing herself first one side and then to the other side of the bed and apparently was in considerable pain and very short of breath."

In answer to a question as to what Mrs. Hunt said on that occasion her mother testified:

"Well, she said she wanted to confess to me, that she could not die without asking me to forgive her."

At the request of counsel for defendant, in the absence of the jury, this witness was further questioned as to the circumstances under which the alleged dying declaration was made. In the absence of the jury she testified as follows:

"*Mr. Foster:* It is your testimony at this time, is it, however, is it not, that on the occasion that you have referred to, and in which you have fixed the time as approximately 11 o'clock prior to her death your daughter made a statement to you, I cannot die without asking you to forgive me, or words to that effect?

"*A.* Yes, sir.    *    *    *

"*The Court:* Were those her words?

"*A.* Yes, sir.

"*The Court:* As you now recall them?

"*A.* Yes.

"*The Court:* About what time in the day did she make that statement?

"*A.* I think about 11 o'clock.

"*The Court:* And did she follow that immediately with the statement with reference to this alleged illegal operation?

"*A.* Yes, sir, at the same time when I went in the room where she was alone.

"*The Court:* Is there any question in your mind about her having used those words, that she could not die without confessing?

"*A.* That is just what she said, if I am permitted to use the words, she said, 'Mamma, I cannot die without confessing to you what I have done.'

"*The Court:* Very well. I think, gentlemen, that we will have to receive the testimony. You can offer your copy of the testimony then and we will submit it to the jury with the usual instructions.

"*Mr. Pierce:* May I invite the Court's attention to the question and answer on page 105 in connection with the interrogation by the Court which has just taken place?

"*The Court:* Well, I realize that we have the testimony that the witness has given here on this record and I appreciate the fact that you are entitled to offer impeaching proof, but I think we must receive this evidence, subject to your objection, and leave it to the jury to say whether the statements are qualified as a dying declaration."

On resuming the trial before the jury, the court announced:

"The testimony will be received. It will be a question for the jury to weigh the statements made under a sense of imminent death or a feeling of imminent death."

The same witness was then again asked, in the presence of the jury, what her daughter had said to her on this occasion, and she testified before the jury as follows:

"The first thing she said was, she asked me if her husband had told me what she told me and I told

her he had, and then she asked me if I would forgive her and I said yes, and then she said that if anything happened, and I said, what did you do, and she said she had a criminal operation, and I said, what had she done and she said that she had had a criminal operation, and I asked her who did it. She said, Dr. Bradfield from Portland.

"*Q.* At the risk of repetition, because I am unable to remember whether these questions were asked you when the jury was present or when they were out of the room, I want to call your attention to a little earlier in the evening when you were in your daughter's room, together with one of your sons, the son that lives at home, and ask you if anything was said by your son about your daughter with respect to future events and what her reply was?

"*A.* Well, my son told her to cheer up, she was crying.

"*Q.* Your daughter was crying?

"*A.* Yes. Mrs. Hunt was crying. He told her to cheer up, that she would be well in a few days and go home, and she said, oh, no, she never would be able to go home again, that she was all through.

"*Q.* That is all."

At other places in the record it appears this witness testified that her daughter had used the expression "if anything happens" she wanted to confess and to be forgiven.

From the foregoing it is apparent that evidence was produced in advance of receiving the alleged dying declaration to determine whether the declaration was made under the belief that death was impending. This conforms to the rule laid down by this court. *People* v. *Simpson,* 48 Mich. 474; *People* v. *Christmas,* 181 Mich. 634, and *People* v. *Fritch,* 210 Mich. 343.

The determination of the question of declarant's belief in impending death was left to the jury under proper instructions. No claim is made that the jury were not properly instructed in that regard. See

*People* v. *La Panne,* 255 Mich. 38. No error was committed in admitting the testimony.

Defendant claims that the dying declaration was merely a conclusion and not such a statement of fact as the deceased declarant might have testified to if present at the trial. This claim is based upon the statement alleged to have been made by the declarant, as testified to by her mother, "she said that she had had a criminal operation. * * * I asked her who did it. She said, Dr. Bradfield from Portland." In *People* v. *Fritch, supra,* abortion is referred to as an "illegal operation." The terms, "abortion," "illegal operation," and "criminal operation," all have a common usage and, when "criminal operation" is used in such connection as in the case at bar, it must be considered a statement of fact and not merely an opinion or conclusion. We see no merit in this claim.

Conviction and sentence affirmed.

NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with BOYLES, J.

WIEST, J. (*dissenting*). It is settled law in this State that dying declarations must be such narrative statements of fact as a witness, if living, might properly give on the stand. *People* v. *Olmstead,* 30 Mich. 431. See, also, *Montgomery* v. *State,* 80 Ind. 338 (41 Am. Rep. 815), and 1 Wharton's Criminal Evidence (11th Ed.), § 535.

The charge against defendant, briefly stated, was that by a criminal operation upon Mary Irene Hunt, a pregnant woman, defendant caused her death. This involved considerations of fact and law.

The statement by declarant that "she had had a criminal operation" performed by Dr. Bradfield was inadmissible under elementary rules of evidence.

Had the statement not denominated the operation "criminal," it might be held but a statement of fact, but characterizing it "criminal" rendered it inadmissible, for that was the ultimate issue before the jury, involved law as well as facts, and was inadmissible from the lips of any witness. When the declarant termed the operation "criminal" she classed it as such in her opinion and this was inadmissible for, whether criminal or not, it depended upon the facts and applicable law. The attention of the trial court was sufficiently called to this point.

For this error the conviction should be reversed and a new trial granted.

CHANDLER, C. J., concurred with WIEST, J.