PEOPLE v WILLIAMS

1. Sequestration—Jury—Discretion of Judge—Appeal and Error
   —Standard for Review—Prejudice.

   Sequestration of a jury is discretionary with the trial judge; the
   applicable standard for reviewing an alleged abuse of this
   discretion is an affirmative showing of prejudice as a result of a
   failure to sequester and not a mere possibility of prejudice.

2. Criminal Law—Evidence—Other Crimes—Jury—Examination
   of Jurors—Disqualification.

   Evidence of the commission of other crimes by the defendant in a
   criminal trial generally may not be received; the court, how-
   ever, must be allowed a reasonable amount of latitude where it
   attempts to uncover prejudicial pre-trial publicity and may
   permit prospective jurors to be interrogated as to what they
   have read in the newspapers and what they have heard which
   would tend to disqualify them as jurors and subject them to
   challenge either for cause or peremptorily.

3. Conspiracy—Homicide—Time—Indictment and Information—
   Murder—Date of Murder.

   An information which alleges the actual date of the murder that
   the defendant is alleged to have conspired to commit suffi-
   ciently informs the defendant of the time of the offense where
   the defendant is charged with conspiracy to commit murder in
   the first degree; a conspiracy to violate existing laws is usually
   a continuing offense, extending over some period of time, and
   the prosecution may charge and prove the offense in any part
   of such period.

4. Appeal and Error—Criminal Law—Instructions to Jury—
   Manifest Injustice—Preserving Question.

   Reversal of a defendant's conviction because of an erroneous jury

References for Points in Headnotes

[1] 75 Am Jur 2d, Trial § 949 et seq.
[2] 29 Am Jur 2d, Evidence § 320 et seq.
    75 Am Jur 2d, Trial § 32.
[3] 41 Am Jur 2d, Indictments and Informations §§ 115, 116.
[4] 5 Am Jur 2d, Appeal and Error § 891.

instruction is not warranted absent a showing of manifest injustice where no objection to the instruction was made at trial.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted June 8, 1977, at Detroit. (Docket No. 24098.) Decided October 10, 1977. Leave to appeal applied for.

Louis E. Williams was convicted on one count of conspiracy to commit murder in the first degree, two counts of murder in the first degree, and one count of murder in the second degree. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training & Appeals, and *Maura D. Corrigan,* Assistant Prosecuting Attorney, for the people.

*Terence R. Flanagan,* Assistant State Appellate Defender, for defendant.

Before: J. H. GILLIS, P. J., and BRONSON and R. E. ROBINSON,* JJ.

R. E. ROBINSON, J. Defendant was convicted by a jury on one count of conspiracy to commit murder in the first degree, on two counts of murder in the first degree, and on one count of murder in the second degree. He was sentenced to life imprisonment on January 30, 1975. His appeal raises nine issues, four of which merit discussion.

The key witness for the people was one James B. (Big Jimmy) Hendricks who, as part of a bargained plea, testified that he was solicited by the defend-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ant to kill two of defendant's employees whose lives defendant had farsightedly caused to be insured against the loss thereof with defendant named as beneficiary. The death contract also included a third employee whose execution was to keep defendant's girl friend "in line". With the aid of his son, Little Jimmy, and another, Big Jimmy partially performed his part of the bargain, killing the two insureds and a third person who was unfortunate enough to be in their company at the time. Additional facts will be set forth as each issue may require.

I

*Did the trial court err by refusing to sequester the jury?*

Before jury selection commenced, defendant's counsel moved to sequester the jury. This was denied. On the second day of the trial, as the result of reference to the trial in a local television newscast, the motion was renewed. Upon questioning of the jurors by the court, two jurors said they saw the newscast, but could nevertheless render an impartial decision. The motion was again denied. At the end of the second day, the motion was again renewed because defense counsel was informed that a spectator had commented outside the court room "they ought to kill him now, they know he is guilty". The motion was again denied. On the fourth day of the trial, a juror informed the trial judge that she had just learned from her son that he was an acquaintance of Little Jimmy, one of the alleged killers, and that Little Jimmy had been in her home. This juror was excused from the jury and those jurors to whom she had imparted the information indicated that it would not affect their impartiality.

Defendant argues that this series of incidents . demonstrates an abuse of discretion by the trial judge in failing to sequester the jury. We do not agree.

*People v Nick,* 360 Mich 219; 103 NW2d 435 (1960), affirms the rule that sequestration of a jury is discretionary with the trial judge, and it sets forth as the applicable standard an affirmative showing of prejudice (not a mere possibility) as the result of a failure to sequester. The trial judge, who was in the best position to determine any adverse impact on the jury stemming from these incidents and who in this instance was an experienced trial judge, found no resulting prejudice; nor do we.

II

*Did the trial court err by questioning the jury during voir dire concerning their knowledge of any other cases pending against defendant?*

During the jury selection, the judge, after being informed by the prosecutor that there might be other cases pending against defendant, put the following question to the prospective jurors:

"I am told by Mr. Williams' counsel that he may be the defendant in other cases that might be pending. Let me inquire then that even though you may not recall hearing or reading anything about this case, or about Mr. Williams in relationship to this case, is there any prospective juror who feels that he or she may have heard or read something about Mr. Williams on some other cases?"

Our Supreme Court confronted a similar situation in *People v Fritch,* 210 Mich 343; 178 NW 59

(1920), when prospective jurors were asked during jury selection:

"Have you heard or read about any other cases or charges pending against Dr. Fritch?"

The Court held:

"While the general rule is that evidence of the commission of other crimes may not be received, and none was offered or received in this case, and while a less objectionable form of question could have been propounded, it is a matter of general practice to permit the prospective jurors to be interrogated as to what they have read in the newspapers and what they have heard which would tend to disqualify them as jurors and subject them to challenge either for cause or peremptorily. It is important to both the prosecution and the defendant that a fair jury be obtained, one made up of men who had not prejudged the case, who had not made up their minds. To secure this end there must be some latitude permitted in the examination of prospective jurors. We are not impressed that a latitude was indulged in in the instant case which resulted in prejudicial error." *Id.* 345.

The question here, as in *Fritch,* was aimed at uncovering prejudicial pre-trial publicity. This cannot be done in a vacuum, and the court here, as in *Fritch,* must be allowed a reasonable amount of latitude for that purpose. We find no prejudicial error.

## III

*Did the trial court err by failing to quash the conspiracy charge against defendant for failure of the information to describe the time span covered by the alleged conspiracy?*

The information alleged only the actual date of

the alleged murders. Defendant suggests that he is entitled to know when the conspiracy is alleged to have commenced and ended. In support of this position, defendant cites *People v Norwood,* 312 Mich 266; 20 NW2d 185 (1945). While that case considered the reverse of defendant's ˙ charge, charging conspiracy over a span of time instead of on a particular date, the Courts holding covers both cases:

" * * * a conspiracy to violate existing laws is usually a continuing offense, extending over some period of time, and the prosecution may *charge* and prove the offense in any part of such period." *Id.* 275. (Emphasis supplied.)

See also *People v Nawrocki,* 6 Mich App 46, 57; 148 NW2d 211 (1967). Defendant was sufficiently informed of the time of the offense.

## IV

*Did the trial court err when it instructed the jury that malice is implied from any deliberate or cruel act against another, or from an unprovoked, unjustifiable or inexcusable killing?*

The trial court's instructions on malice were these:

"Now murder at common law and as charged in each of the last three counts of this information, may be defined as where a person of sound memory and discretion willfully and unlawfully kills any human being with malice aforethought. And that malice can be expressed or implied.

"So that in order for a felonious homicide to be murder, you need one more element, the element of malice. Now the term malice as used in this definition signifies a wrongful act done intentionally and without

legal justification or excuse. The real test of malice is to be found in the presence or the absence of adequate cause or provocation to account for the killing.

"Malice is used then in a technical sense. It includes not only anger, hatred, and revenge, but every other unlawful and unjustifiable motive. It is not confined to particular ill will toward the deceased, but is intended to denote an action flowing from a wicked and corrupt motive or where the fact has been attended with such circumstances as carry in them the plain indication of a heart regardless of social duty and fatally bent upon mischief. And that is why we say malice is implied from any deliberate or cruel act against another person, however sudden the act might be.

"The time within which the wicked purpose is formed is immaterial. Malice aforethought does not imply deliberation or the lapse of considerable time between the formation and the execution of the intent to take life, but rather malice aforethought denotes purpose and design.

"In considering this subject, then, you should carefully weigh the evidence bearing on the act charged, how it was committed, what preceded it, and all of the surrounding circumstances, the means or the instrument used, if any were used, and all facts throwing light upon the nature of the act charged to have been committed.

"Possibly I can make this clearer by an illustration. If one without just cause inflicts a wrong upon another, we call him malicious. So when one without any legal provocation, justification, or excuse, intentionally kills another, we call him a murderer. The law implies from such an unprovoked, unjustifiable or inexcusable killing, the existence of that wicked disposition which the law terms malice aforethought.

"If a man kills another suddenly and without provocation, the law implies malice, and the offense is murder.

"The instrument with which the killing was done may be taken into consideration, because the intention to kill, in the absence of evidence showing a contrary intent, may be inferred from the use of a deadly

weapon or an object in such a manner that the death of the person who is assaulted would be the inevitable consequence."

Defendant made no objections to the instruction at the trial level. Absent objection, an erroneous instruction will not warrant reversal without a showing of manifest injustice. *People v Cain,* 67 Mich App 433, 438; 241 NW2d 233 (1976).

It is defendant's contention that by instructing the jury that the law implies malice the trial judge took from the jury one of its fact-finding functions, citing *People v Martin,* 392 Mich 553; 221 NW2d 336 (1974). We disagree. The instruction in *Martin* presumed malice where one kills another without warning, using a deadly weapon. Under Judge Crockett's instructions, the jury, in its search for malice, was directed to "carefully weigh the evidence bearing on the act charged, how it was committed, what preceded it, and all of the surrounding circumstances, the means or the instrument used, if any were used, and all facts throwing light upon the nature of the act charged to have been committed". We find no error in these instructions when taken as a whole.

Affirmed.