878 F.2d 1437
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lewis E. WILLIAMS, Petitioner-Appellant,
v.
Theodore KOEHLER, Respondent-Appellee.
 No. 86-1703.
 United States Court of Appeals, Sixth Circuit.
 July 10, 1989.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges and DAVID D. DOWD, Jr., District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Petitioner Lewis E. Williams, an inmate at the State Prison of Southern Michigan at Jackson, appeals the district court's denial of his petition for writ of habeas corpus, 28 U.S.C. Sec. 2254. We affirm.
 
 I.
 
 2
 In January 1975, petitioner was convicted by jury verdict in Detroit Recorder's Court of second degree murder, M.C.L. Sec. 750.317, two counts of first degree murder, M.C.L. Sec. 750.316, and conspiracy to commit first degree murder, M.C.L. Sec. 750.157a. He was sentenced to four terms of life imprisonment, to be served concurrently.
 
 
 3
 The facts underlying petitioner's conviction were summarized by the magistrate and adopted by the district court as follows:
 
 
 4
 The two key witnesses against Petitioner were James B. (Big Jimmy) Hendricks and James D. (Little Jimmy) Hendricks, a father-son pair who were acquainted with Petitioner and worked for him at his Detroit Party Store.
 
 
 5
 Big Jimmy testified that Petitioner approached him in December of 1973 and told him that something had to be done about one of his employees, a Carolyn Morgan whom he thought was being "sticky fingered." Petitioner told him that he was obtaining a life insurance policy on her and that he wanted her killed when it came through. Big Jimmy would share in the insurance proceeds when they were paid.
 
 
 6
 Big Jimmy returned to Detroit on February 17, 1974, after escaping from Jackson Prison ..., and spoke with Petitioner again in March about killing Carolyn Morgan. Subsequent conversations were held in March and April, wherein Petitioner represented that he also wanted Wanda Henry, another employee upon whom insurance had been obtained and a Desnald (Ronnie) Thomas, a third employee (with no insurance taken out), killed.
 
 
 7
 Little Jimmy Hendricks testified that Petitioner approached him in January 1974 (while his father was in prison) and asked him about killing Miss Morgan and obtaining the insurance proceeds. He had discussions with Petitioner from February through April concerning the proposed killings ... and discussed how they might make it look like an accident.
 
 
 8
 Both [Big Jimmy and Little Jimmy] testified that they set out to accomplish the killings on the weekend of April 12, 1974. They decided to bring in one Gregory Paige, a friend of Little Jimmy, whom they told they were going to an apartment to rob the occupants of money and narcotics. Little Jimmy obtained the keys to the apartment and all three attempted entry Friday and Saturday night. Each time they were unable to enter the apartment, however, and had to obtain different keys from Petitioner. On Monday night, or early Tuesday morning, they all three were admitted to the apartment by Wanda Henry. Inside they discovered another girl, Iris Foster, and they bound and gagged the two girls. They waited for Carolyn Morgan to return and, upon her arrival, she too was bound and gagged. The three waited for Mr. Thomas, who arrived a short time later, and he was immediately knocked down, his hands tied and a weapon taken from him. When they were distracted, however, by a noise from the bedroom where the girls were, Mr. Thomas, still hand-tied, broke through a plate glass window, fell two stories below, and escaped. Big Jimmy was able to fire one shot at him out the window and then returned to the bedroom and shot the three tied girls in the head. The three men then left, searched for Mr. Thomas, but were unable to find him. Evidence of Petitioner's application for "Key-man" insurance on Miss Morgan and Miss Henry was introduced, as well as his claims for benefits, filed shortly after their deaths.
 
 
 9
 Mem. op. at 9-10.
 
 
 10
 Petitioner appealed his conviction. While the appeal was pending, petitioner filed a petition for writ of habeas corpus, which the district court dismissed for failure to exhaust state remedies. The Michigan Court of Appeals subsequently affirmed petitioner's conviction, People v. Williams, 78 Mich.App. 737, 261 N.W.2d 189 (1977), and the Michigan Supreme Court denied petitioner's application for leave to appeal, 403 Mich. 818 (1978). In 1979 petitioner filed another petition for habeas relief, which the district court denied in March 1980. Petitioner then returned to state court, raising additional grounds for appellate relief. In September 1982, the Michigan Court of Appeals denied leave to appeal (Docket No. 63757), and in September 1983, the Michigan Supreme Court denied leave to appeal, 417 Mich. 1100.6.
 
 
 11
 In September 1983, petitioner filed the instant petition for writ of habeas corpus. Respondent filed a motion to dismiss the petition on the ground that petitioner had "abused the writ" in violation of Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts. The district court referred the case to a magistrate, who, after conducting an evidentiary hearing, issued a report recommending that respondent's motion to dismiss under Rule 9(b) be denied. In March 1986, the district court issued an opinion in which it denied respondent's Rule 9(b) motion to dismiss and rejected petitioner's claims for habeas relief. Petitioner appeals the denial of habeas relief.[1]
 
 II.
 
 12
 Petitioner first claims that he is entitled to habeas relief because he was denied due process by the prosecution's use of false evidence on three occasions. "[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' " Giglio v. United States, 405 U.S. 150, 153 (1972) (quoting Mooney v. Holohan, 294 U.S. 103, 112 (1935)). "A new trial is required if 'the false testimony could ... in any reasonable likelihood have affected the judgment of the jury....' " Giglio, 405 U.S. at 154 (quoting Napue v. Illinois, 360 U.S. 264, 271 (1959)).
 
 A.
 
 13
 Petitioner challenges the prosecution's elicitation of the following testimony from "Big Jimmy":
 
 
 14
 Q. ... Now in December of 1973, if you recollect, did you and [petitioner] have any conversations on the subject of Carolyn Morgan?
 
 
 15
 A. Yes, we did.
 
 
 16
 Q. All right. Can you tell me when the first such conversation took place as best as you can recollect?
 
 
 17
 A. I do believe it was around the first of the month. Somewhere around between [sic] the first and 7th of the month.
 
 
 18
 Tr. at 341-42. Petitioner argues that the prosecution knowingly obtained false testimony during this exchange because the prosecution knew that "Big Jimmy" had been in jail from November 29, 1973, until December 14, 1973, and therefore could not have had the conversation with petitioner in early December as he testified.
 
 
 19
 However, the jury was made aware of this apparent error in "Big Jimmy's" testimony because the prosecution later stipulated that "Big Jimmy" had been in jail in early December 1973. In closing argument the prosecution stated:
 
 
 20
 Now the defense has offered to you, through stipulation entered into by me, certain evidence that Big Jimmy Hendricks was in jail in the first part of December.... Yet Big Jimmy testified to you that early in December he and [petitioner] had the conversations, the initial conversations concerning about [sic] the killing.
 
 
 21
 That deals with dates, not content. The dates are tough to remember; the content, that's something else.
 
 
 22
 Tr. at 899. Because "Big Jimmy's" apparent error as to the date of his claimed conversation with petitioner was revealed to the jury and an explanation suggested, the jury was not deceived and its judgment could not have been improperly affected by this apparently erroneous testimony. We therefore reject this claim for habeas relief.
 
 B.
 
 23
 Petitioner next argues that the prosecution made a false statement in conjunction with a stipulation that two airline tickets for a trip to Hawaii in late March 1974 were purchased in the name of "Mr. and Mrs. Williams." The prosecution stated to the jury:
 
 
 24
 The scope of the stipulation has to do with certain airline tickets purchased by Mr. Williams in his name purporting to indicate that the tickets would be used between the 22d of March and, I think, the first of April, 1974; with the further caveat that the tickets were not evidence of the fact that they were indeed used by Mr. Williams.
 
 
 25
 Tr. at 829. Petitioner claims that this was a false statement because the prosecution knew that petitioner had used the tickets and had gone to Hawaii because four people--petitioner, his wife (Emmaree Young), Desnald Thomas, and Dorothy Griggs--stated this to the prosecution or to the police.
 
 
 26
 Petitioner's argument is patently without merit. Petitioner does not dispute that the tickets were not evidence that they had in fact been used by petitioner. And, as the district court stated, the prosecution did not "know" that petitioner had been in Hawaii in late March merely because four people said so: "The prosecution is not obligated to accept everything it hears. Just because four people say something does not mean that what was said is true. The four may have been mistaken or lying." Mem. op. at 12. We agree, and we reject this habeas claim.
 
 C.
 
 27
 Petitioner's final false evidence claim is that the prosecution introduced a gun owned by petitioner as the murder weapon when the state knew or should have known that the weapon was not in fact the murder weapon. The district court held that even if this claim is true, there was no constitutional violation because there was no "reasonable likelihood of a different verdict":
 
 
 28
 The only issue in the trial ... had nothing to do with the murder weapon. There is no question but that the Hendricks killed the three victims. Both of them pled guilty to second-degree murder and received life sentences of imprisonment. Their testimony on this point was corroborated by Thomas. The issue in the trial of this case was whether Petitioner was involved in the conspiracy. The Hendricks killed the victims. Whether the gun put in evidence was the one used is a question not affecting the issue tried, i.e., whether Petitioner was guilty of conspiracy.
 
 
 29
 Mem. op. at 14.
 
 
 30
 We agree with the district court that even if the gun put in evidence was not the murder weapon, there is no "reasonable likelihood" that such introduction of false evidence affected the jury's judgment of petitioner's guilt. The introduction of the murder weapon was not material to the question of petitioner's guilt of the crimes charged because whether this gun was the one used by "Big Jimmy" to commit the murders did not go to the question of petitioner's participation in a conspiracy with the Hendricks. We reject this claim for habeas relief.
 
 III.
 
 31
 Petitioner next alleges that he was denied due process because the prosecution suppressed a statement by Big Jimmy exonerating petitioner. The district court held that even if the prosecution did fail to disclose such a statement, it would not have affected the jury verdict because the prosecution did make the jury aware of three other statements by "Big Jimmy" purportedly exonerating petitioner:
 
 
 32
 [T]he prosecutor brought out that Big Jimmy had written a letter to Petitioner while in the Wayne County Jail exonerating Petitioner (TR 471), wrote a second letter exonerating him after testifying at Petitioner's preliminary exam (TR 475), and, on the day of his testimony at trial, had orally told Petitioner that he was testifying against him only to relieve pressure on himself and his wife (TR 480).
 
 
 33
 It is thus clear that any document prepared by Mr. Hendricks's attorney exonerating Petitioner would be cumulative, simply a fourth instance of how Hendricks was dealing with Petitioner at the time, and would have had insufficient impact on the jury to warrant a finding that it might have altered their verdict.
 
 
 34
 Mem. op. at 14-15.
 
 
 35
 In cases of prosecutorial nondisclosure, due process is violated
 
 
 36
 if the omitted evidence creates a reasonable doubt that did not otherwise exist.... This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.
 
 
 37
 United States v. Agurs, 427 U.S. 97, 112-13 (1976) (footnote omitted).
 
 
 38
 In light of the jury's knowledge of three other "exonerating" statements by "Big Jimmy," the prosecution's alleged failure to disclose another such statement by "Big Jimmy" would not amount to constitutional violation under the Agurs test. We therefore reject this claim for habeas relief.
 
 IV.
 
 39
 Petitioner next argues that he was denied a fair trial by the trial court's "berating" of defense counsel. This court has held:
 
 
 40
 "Unless they amount to constitutional violations, prejudicial comments and conduct by a judge in a criminal trial are not proper subjects for collateral attack on a conviction." In collateral proceedings, the test is "whether the errors alleged could have rendered the trial fundamentally unfair." To violate a defendant's right to a fair trial, "a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree."
 
 
 41
 McBee v. Grant, 763 F.2d 811, 818 (6th Cir.1985) (citations omitted).
 
 
 42
 Based on our review of the record, we are satisfied that the statements of the trial court that petitioner describes as "berating" of counsel did not render defendant's trial fundamentally unfair. Accordingly, we reject this claim for habeas relief.
 
 V.
 
 43
 Petitioner claims that his sixth amendment right to effective assistance of counsel was violated by various alleged failings of counsel. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for determining whether defense counsel's representation was so deficient so as to constitute a denial of the sixth amendment right to effective assistance of counsel and require reversal of a conviction:
 
 
 44
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 
 45
 466 U.S. at 687. The Strickland Court emphasized that
 
 
 46
 [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to secondguess counsel's assistance after conviction ..., and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.... Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....
 
 
 47
 Strickland, 466 U.S. at 689 (citation omitted).
 
 
 48
 Petitioner's first allegation of trial counsel error is that counsel failed to investigate potential alibi witnesses. Petitioner asserts that such an investigation would have revealed that he was out of town in early December 1973 and in late March 1974, two dates on which the Hendricks testified that they discussed the murders with petitioner. However, we agree with the district court that such evidence would not have established an "alibi" for petitioner--testimony at trial revealed that petitioner discussed the murders with the Hendricks on various occasions over a period of several months; at most, this evidence would have gone to the Hendricks' credibility, an issue tested by defense counsel before the jury.
 
 
 49
 Petitioner also alleges that trial counsel's performance was deficient because counsel failed to obtain ballistics tests on the alleged murder weapon. As stated in part II.C above, the identity of the murder weapon was not material to petitioner's participation in the conspiracy. Therefore, this alleged deficiency in counsel's performance could not have prejudiced petitioner.
 
 
 50
 Petitioner next claims trial counsel erred by failing to subpoena "Big Jimmy" Hendricks's attorney in order to elicit testimony as to an alleged statement of "Big Jimmy's" exonerating petitioner. However, as stated in part III above, the jury was presented with evidence of three such exonerating statements by "Big Jimmy." Thus, petitioner suffered no prejudice by the alleged failure to elicit evidence of a fourth such statement.
 
 
 51
 Petitioner also claims that he was denied the effective assistance of counsel because appellate counsel in a prior habeas petition failed to raise the issues petitioner now raises. Petitioner, however, makes no showing of prejudice as a result of this alleged deficiency in appellate counsel's performance.
 
 
 52
 We hold that petitioner has failed to establish a violation of his sixth amendment right to effective counsel, and we reject this claim for habeas relief.[2]
 
 VI.
 
 53
 Petitioner's final claim for habeas relief is that he was denied due process by the trial court's failure to instruct the jury sua sponte as to the inherent unreliability of uncorroborated accomplice testimony. In Takacs v. Engle, 768 F.2d 122 (6th Cir.1985), this court held that such a claim does not assert a deprivation of constitutional magnitude:
 
 
 54
 The Constitution says nothing about accomplice testimony.... It is not irrational to rely on uncorroborated accomplice testimony, and a rational trier of fact could therefore have found [defendant] guilty beyond a reasonable doubt based solely on [the accomplice's] testimony.
 
 
 55
 Given this conclusion, [defendant's] claim that the jury instructions should have limited the weight to be given to [the accomplice's] testimony must ... fail. If uncorroborated accomplice testimony is sufficient to support a conviction under the Constitution, there can be no constitutional right to instruct the jury that it must find corroboration for an accomplice's testimony.
 
 
 56
 768 F.2d at 127 (footnote omitted).
 
 
 57
 In light of Takacs, this claim does not assert a constitutional violation; therefore, we reject this claim for habeas relief.
 
 
 58
 AFFIRMED.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 In his appellate brief and in oral argument, respondent has contended that the district court erred in denying his motion under Rule 9(b) to dismiss the petition for "abuse of the writ." However, respondent did not file a notice of cross-appeal challenging the denial of this motion. "[F]iling a notice of cross-appeal is jurisdictional where an appellee wishes to attack part of a final judgment in order to enlarge his rights or to reduce those of his adversary." SEC v. Youmans, 729 F.2d 413, 415 (6th Cir.), cert. denied, 469 U.S. 1034 (1984). We therefore decline to consider respondent's contention that the district court erred by refusing to dismiss the petition for abuse of the writ
 
 
 [2]
 On appeal petitioner also alleges that he was denied effective assistance of counsel by trial counsel's failure to subpoena "Big Jimmy's" wife and by appellate counsel's failure to obtain a transcript of the preliminary examination. Petitioner, however, failed to raise these allegations in the district court. We therefore decline to consider these claims. See Brown v. Marshall, 704 F.2d 333, 334 (6th Cir.), cert. denied, 464 U.S. 835 (1983)