### PEOPLE v CLAY

Docket No. 77-2726. Submitted November 6, 1979, at Lansing.—Decided January 23, 1980. Leave to appeal denied, 409 Mich 857.

Benny L. Clay was charged with first-degree murder and convicted of second-degree murder, Oakland Circuit Court, Richard D. Kuhn, J. The conviction was for the shooting death of a police officer who was assigned to guard defendant in a hospital room, where defendant was recovering from wounds suffered in a prior holdup attempt. The testimony presented established that two confederates entered the hospital room and overpowered the police officer on duty, took the officer's service revolver, tied and gagged the officer and left the officer in an adjoining bathroom. A relief police officer entered the hospital room and gunfire was exchanged, with a total of 18 shots being fired, emptying each of the three guns involved, i.e., the overpowered officer's gun, the gun the confederate brought and the relief officer's gun. Defendant and one confederate escaped from the hospital, leaving their injured companion. The relief officer was struck by six bullets, at least one of which came from the gun taken from the other police officer, and died as a result of those wounds. The other patient in the hospital room testified that he saw Clay pick up the first officer's gun and that at no time during the incident did anyone have more than one gun. Defendant appeals. Held:

1. Defendant's contention that the trial court erred in refusing to grant defendant's motion for a directed verdict of acquittal is without merit. In reviewing the denial of a motion for a directed verdict of acquittal, the evidence is viewed in the light most favorable to the prosecution to determine whether that

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 849, 886.
[2] 29 Am Jur 2d, Evidence § 266.
  30 Am Jur 2d, Evidence §§ 1091, 1125, 1172.
[3] 29 Am Jur 2d, Evidence §§ 159, 165, 166.
[4] 29 Am Jur 2d, Evidence § 1170 et seq.
[5] 77 Am Jur 2d, Venue § 84.
[6] 77 Am Jur 2d, Venue §§ 83-85.
[7] 29 Am Jur 2d, Evidence § 327.

evidence, if credible and believed, would justify a reasonable person in concluding that all the elements of the crime charged were established beyond a reasonable doubt. While the prosecution must negate every reasonable theory of defendant's innocence, the prosecution need not specifically negate a theory of innocence which would require the finder of fact to disregard eyewitness testimony. The weight to be accorded to such testimony was properly left to the jury, and it cannot be said that the jury erred in refusing to disregard the eyewitness testimony.

2. Defendant failed to establish on the record that the trial court abused its discretion in refusing to grant a change of venue. The trial court found that there was no strong and bitter prejudice against the defendant in the community. Prospective jurors who had been subjected to adverse publicity were excused for cause, and the defendant expressed no objection to the jury which was impaneled. Since there is nothing in the record to establish that the jury as impaneled was not impartial, it cannot be said that the trial court abused its discretion by denying the motion for a change of venue.

3. Defendant's motion to suppress any reference to his prior criminal record was addressed to the trial court's discretion. The record establishes that the trial court recognized its discretionary power and considered the relevant factors. Upon the record established in the trial court, it cannot be said that the trial court abused its discretion in admitting for the purpose of impeachment evidence of defendant's prior convictions for felonious assault, unarmed robbery and armed robbery.

Affirmed.

MACKENZIE, J., concurred in the result only.

1. CRIMINAL LAW — APPEAL AND ERROR — MOTIONS — DIRECTED VERDICT OF ACQUITTAL — REASONABLE.

A reviewing court, in passing on a motion for a directed verdict of acquittal, must view the evidence in the light most favorable to the prosecution and determine whether the evidence, if credible and believed, would justify a reasonable person in concluding that all elements of the crime charged were established beyond a reasonable doubt.

2. CRIMINAL LAW — EVIDENCE — CIRCUMSTANTIAL EVIDENCE — SUFFICIENCY OF EVIDENCE.

A conviction on the basis of circumstantial evidence requires that the prosecution must not only establish facts which point to the

defendant's guilt, but also, must establish facts which negate any reasonable theory of innocence.

3. Evidence — Inferences — Established Facts.

An inference drawn from facts established by direct eyewitness testimony and not from speculative or uncertain facts does not constitute an impermissible building of an inference on an inference.

4. Criminal Law — Evidence — Inferences — Trier of Fact.

A conviction will not be disturbed on the basis that the prosecution failed to negate every reasonable theory consistent with a defendant's innocence where the theory of innocence urged by the defendant would require the finder of fact to disregard eyewitness testimony.

5. Venue — Criminal Law — Change of Venue — Discretion — Appeal and Error.

A motion for a change in venue in a criminal case is addressed to the trial court's discretion, and the trial court's decision will be overturned on appeal only on a finding of an abuse of discretion.

6. Venue — Criminal Law — Change of Venue — Pretrial Publicity — Impartial Jury.

A motion for a change of venue was properly denied where there was no finding of a strong community feeling against, or a deep and bitter prejudice toward, the defendant, where the prospective jurors who had been subjected to adverse publicity were excused for cause and where the defendant expressed no objection to the jury which was impaneled, and there was nothing in the record to establish that the jury as impaneled was not impartial.

7. Criminal Law — Evidence — Prior Convictions — Impeachment — Discretion — Abuse of Discretion.

It was not error to permit the use of evidence of a defendant's prior convictions for felonious assault, unarmed robbery and armed robbery for the purpose of impeachment at the defendant's trial for murder where the trial court recognized that the question of the admission of such evidence was addressed to the court's discretion and the court exercised the same, there being nothing in the record to establish an abuse of discretion.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,*

Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Lynn V. Hooe, Jr.,* for defendant on appeal.

Before: R. M. MAHER, P.J., and MACKENZIE and J. H. PIERCEY,* JJ.

PER CURIAM. Defendant appeals as of right from his jury conviction of second-degree murder, contrary to MCL 750.317; MSA 28.549. He was sentenced to life imprisonment with credit given for 218 days previously served.

The defendant had been wounded in the arm after an attempted holdup of a liquor store in Pontiac and was admitted to Pontiac General Hospital as a police prisoner. The defendant was sharing a semi-private room with a patient named John Underwood. In the early morning hours on December 7, 1976, Officer Robert Hunter of the Pontiac Police Department was on duty in the hospital room to guard the defendant. Officer Hunter was due to be relieved by Officer Gerald Carpenter at approximately 5:30 a.m. The defendant was sleeping in his bed.

At about 5:30 a.m., Officer Hunter heard footsteps in the hallway and saw a man, later identified as Melvin Scott, enter the hospital room pointing a chrome or nickel plated revolver. Scott told Hunter not to move, took his .38-calibre service revolver, and ordered him into the bathroom. The officer saw a woman in a nurse's uniform, later identified as Janice Love, standing in the doorway of the hospital room. She asked the defendant whether he was ready. Once Officer Hunter was in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the bathroom, he was tied, gagged, and had a sheet placed over his head. A few moments later, Officer Hunter heard numerous gunshots. When he was able to free himself, he saw Officer Carpenter lying dead on the floor, close to the hall door. The defendant and Ms. Love were gone, and the hallway was empty. Melvin Scott was lying badly injured on the floor between defendant's bed and the wall. Hunter retrieved his revolver, which was lying on defendant's bed. He noted that the gun, which had been fully loaded, had no live rounds in it. Scott's gun was lying under a nightstand which was positioned between the defendant's bed and Underwood's bed.

John Underwood, a 60-year old heart attack patient, testified that he was awakened by some noises at about 5:20 a.m. He saw a man pointing a gun at the police officer who had been guarding the defendant. The officer was escorted to the bathroom. A woman dressed like a nurse, later identified as Janice Love, came over to Underwood's bed, disconnected his bell cord, and put her fingers to her lips, warning him to keep quiet. The defendant got out of bed, and put on Underwood's robe and slippers because he had no clothes of his own. Ms. Love went to the door to keep a lookout and said that someone was coming. Scott hid behind the bathroom door, armed with his silver-colored pistol. Clay and Ms. Love hid behind the door to the hall. Clay was armed at that time with a black pistol. Underwood saw Clay pick up the black pistol from Clay's bed shortly after Hunter was taken into the bathroom. The man outside the door paused, stepped back, drew his gun, and entered the room. Scott fired a shot with the silver-colored gun. More shots were fired, but Underwood could not see what was happening. Officer

Carpenter fell down. Scott came out from behind the bathroom door, and he also fell on the floor. At this time, Clay and Ms. Love left the room. Moments later, Officer Hunter emerged from the bathroom, retrieved his gun and called for assistance. Mr. Underwood stated that at no time during the incident in question did he see anyone in the room with more than one gun.

Dr. Robert Sillery, the pathologist who performed an autopsy on Officer Carpenter, testified that there were 11 bullet wounds in the body, six entry wounds and five exit wounds. The cause of death was determined to be shock and hemorrhage due to multiple gunshot wounds.

Donald McLaughlin, a technician at the Oakland County Crime Laboratory, testified that he examined the bullets recovered from Officer Carpenter's body, his clothing, the shell casings, and the firearms which were on the scene. Based on his comparison test shots, he concluded that at least one of the bullets in Carpenter's body came from Officer Hunter's gun. When recovered, all three of the guns were empty, having fired six rounds each.

Benny Clay testified on his own behalf. He stated that he knew Melvin Scott, but had had no contact with him prior to the escape and knew nothing about it beforehand. He saw Scott disarm Officer Hunter and take him into the bathroom, but did not see where Scott put the gun. Janice Love handed him Underwood's robe and slippers. Scott went to the door and said that someone was coming. At that point, Clay hid behind the door with the slippers in his hand. He denied ever having a gun. Clay heard shooting and when he came out, saw a police officer lying on the floor. Mr. Clay left the room, went to the elevators,

where he met Ms. Love, and they both left the hospital.

On appeal, the defendant claims that the trial court erred reversibly in refusing to direct a verdict for the defendant at the close of the people's case, because the case was based entirely on circumstantial evidence which was not sufficient with which to go to the jury. He claims further that the prosecutor failed to negate every reasonable theory of innocence, namely, that Melvin Scott had used Officer Hunter's gun to kill Officer Carpenter.

In reviewing the denial of a motion for a directed verdict, this Court considers the evidence presented at the time the motion is made in the light most favorable to the prosecution, and determines whether that evidence, if credible and believed, would justify a reasonable person in concluding that all elements of the crime charged were established beyond a reasonable doubt. *People v Royal,* 62 Mich App 756, 758; 233 NW2d 860 (1975), *People v Samuel Smith,* 85 Mich App 404, 409; 271 NW2d 252 (1978), *rev'd on other grounds* 406 Mich 945 (1979).

Under the rule promulgated in *People v Davenport,* 39 Mich App 252, 256; 197 NW2d 521 (1972), where the people's case is based on circumstantial evidence, the prosecution has the burden of proving that there is no innocent theory possible which will, without violation of reason, accord with the facts. *People v Millard,* 53 Mich 63; 18 NW 562 (1884), *People v Spann,* 3 Mich App 444; 142 NW2d 887 (1966). In order to obtain a conviction on circumstantial evidence, the prosecutor must present evidence that not only points to the defendant's guilt but also negates any reasonable theory of innocence. *People v Wingfield,* 62 Mich App 161; 233 NW2d 220 (1975), *People v Talley,* 67 Mich

App 239; 240 NW2d 496 (1976), *People v Samuel Smith, supra.*

While a reasonable inference may be drawn from an established fact, inferences cannot be built on inferences. *People v Atley,* 392 Mich 298, 314-315; 220 NW2d 465 (1974). The pyramiding of inferences is impermissible because it deprives a defendant of the right to be proved guilty beyond a reasonable doubt. *People v McGregor,* 45 Mich App 397; 206 NW2d 218 (1973).

In the case at bar, an eyewitness testified that he saw the defendant pick up a dark gun, like Officer Hunter's and hide behind the door. Many gunshots were heard. Officer Hunter stated that the gun had been fully loaded. When Hunter came out of the bathroom, he retrieved his gun with all six bullets spent. A ballistics expert testified that at least one bullet recovered from Officer Carpenter's body came from Hunter's gun. The eyewitness said that at no time did anyone have two guns in his hand, and he saw Scott with the silver colored gun. Thus, the inference that it was indeed Clay who shot Carpenter with Hunter's gun is based directly on eyewitness testimony, and is not based on any speculative or uncertain facts. The inference is therefore permissible. *People v Eaves,* 4 Mich App 457, 464; 145 NW2d 260 (1966), *People v Belcher,* 29 Mich App 341; 185 NW2d 440 (1971), *People v Davidson,* 88 Mich App 276; 276 NW2d 580 (1979).

The "reasonable" theory of innocence suggested by the defendant on appeal would require the trier of fact to disregard eyewitness testimony. If Scott had both guns, then Underwood was either mistaken or lying when he said that he saw defendant pick up a gun from his bed, and that no one in the room had two guns. It is for the trier of fact to

determine if the prosecution has negated every reasonable theory consistent with defendant's innocence. *People v Fuller,* 395 Mich 451, 455; 236 NW2d 58 (1975). Obviously, the jury did not wish to disregard Underwood's testimony, and we decline to disturb the jury's verdict.

The defendant's second allegation is that the trial court abused its discretion in denying his motion for a change of venue due to pretrial publicity.

The grant or denial of a motion for a change of venue is within the trial court's discretion, and its decision will be overturned on appeal only on a finding of abuse of discretion. *People v Collins,* 43 Mich 259, 262; 204 NW2d 290 (1972), *People v Page,* 83 Mich App 412, 420; 268 NW2d 666 (1978), *People v Thomas,* 86 Mich App 752; 273 NW2d 548 (1978).

The existence of pretrial publicity does not by itself require a change of venue. The movant must demonstrate that there is a pattern of strong community feeling or bitter prejudice against the defendant, and the publicity must be so extensive and inflammatory that jurors could not remain impartial when exposed to it. *People v Dixon,* 84 Mich App 675; 270 NW2d 488 (1978), *People v Collins, supra.*

In the case at bar, there was a seven-month gap between the commission of the crime and the start of jury selection. Prospective jurors who indicated that they had signed a parole reform petition or who were aware of the parole reform petition were examined separately and excused for cause. The defendant expressed no objection to the jury which was finally impaneled. There was no finding of strong community feeling or of the existence of deep and bitter prejudice against the defendant.

There was no indication of adverse publicity during the course of the trial itself. The record does not disclose that defendant had an unfair trial, or that the verdict of second-degree murder was based on evidence outside the record, where defendant had been charged with first-degree murder. Accordingly, we find no abuse of discretion in the trial court's decision not to order a change of venue.

The defendant's final issue on appeal challenges the trial court's denial of defendant's motion to exclude his prior felony convictions for the purpose of impeachment as being reversible error. We disagree.

The use of defendant's prior felony convictions for the purpose of impeachment is within the discretion of the trial court. *People v Jackson,* 391 Mich 323, 335; 217 NW2d 22 (1974). It is erroneous for a trial court to fail to recognize that it has the discretion to exclude a defendant's prior convictions. *People v Jackson, supra.* The factors to be considered by the trial court in deciding whether to permit impeachment by prior convictions were enumerated in *People v Crawford,* 83 Mich App 35, 39; 268 NW2d 275 (1978): (1) the nature of the prior offense and its bearing on defendant's credibility, (2) whether it is for substantially the same conduct for which defendant is on trial, with closely related offenses requiring close scrutiny due to the likelihood of prejudice, and (3) the effect on the decisional process if the defendant does not testify out of fear of impeachment.

In the case at bar, the trial judge stated on the record that he recognized his discretion to admit or exclude defendant's prior felony convictions. The prior convictions were for felonious assault, unarmed robbery, and armed robbery. These

crimes were not similar to the charge of first-degree murder, and the defendant did take the stand on his own behalf. We find no abuse of discretion in allowing defendant's prior convictions to be used for impeachment.

Affirmed.

MacKENZIE, J., concurs in the result only.