PEOPLE v PARTEE

Docket No. 55345. Submitted January 18, 1983, at Detroit.—Decided
April 7, 1983. Leave to appeal denied, 418 Mich 884.

Robert Partee was convicted of first-degree murder and felony-
firearm, Detroit Recorder's Court, Justin C. Ravitz, J. The
defendant's convictions arose out of the killing and subsequent
beheading of three individuals at a private Detroit club. The
defendant was tried in a joint trial with two codefendants. The
defendant appealed alleging that: (1) the trial judge abused his
discretion in denying his motions for a trial separate from his
codefendants, (2) the trial court erred in limiting the scope of
his cross-examination of a prosecution witness, (3) the trial
court erred in denying his motion for a change of venue or for
a continuance, (4) the amount of pretrial publicity denied him a
fair trial, and (5) the trial court erred in denying his pretrial
motion to sequester the jury and in not granting his motion for
a mistrial after a remark was made to a juror during the trial.
*Held:*

1. The trial court did not err in denying the defendant's

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 75 Am Jur 2d, Trial §§ 17, 21.
   Antagonistic defenses as ground for separate trials of codefendants
   in criminal case. 82 ALR3d 245.
[3] 75 Am Jur 2d, Trial § 24.        ·
[4] 4 Am Jur 2d, Appeal and Error § 159.
[5] 75 Am Jur 2d, Trial § 20.
[6] 81 Am Jur 2d, Witnesses §§ 472 *et seq.,* 507.
[7, 8] 21 Am Jur 2d, Criminal Law §§ 389, 390.
   Pretrial publicity in criminal case as ground for change of venue.
   33 ALR3d 17.
[8, 9] 21 Am Jur 2d, Criminal Law § 402.
   21A Am Jur 2d, Criminal Law §§ 688, 841.
   Hostile sentiment or prejudice as ground for continuance of crimi-
   nal trial. 39 ALR2d 1314.
[10] 47 Am Jur 2d, Jury § 303.
[11] 47 Am Jur 2d, Jury § 195 *et seq.*
[12] 75 Am Jur 2d, Trial § 951.
[13] 5 Am Jur 2d, Appeal and Error § 948 *et seq.*
   76 Am Jur 2d, Trial § 1080.

motion for a trial separate from his codefendants. A defendant seeking a separate trial from a codefendant must make an affirmative showing of prejudice to overcome the strong policy in favor of joint trials. The defendant must show by an affidavit that the defenses of the defendants are inconsistent and antagonistic. Here, the defendant and his codefendants did not present to the jury contradictory or antagonistic defenses. The codefendants' theories of the case did not deny the defendant a fair trial. The defendant was not forced to defend himself from evidence on two fronts.

2. The trial court properly limited the scope of cross-examination of the prosecution witness. The scope of cross-examination is left to the trial court's discretion.

3. The trial court did not err in denying the defendant's motion for a change of venue or a continuance. The trial court permitted meticulous and extensive voir dire questioning. The record at the trial reveals no bias against the defendant.

4. The defendant was not denied a fair trial due to the amount of pretrial publicity. All of the jurors except one had heard of the three beheadings; however, only one of the jurors who ultimately deliberated the case had ever heard of the defendant.

5. The trial court did not err requiring reversal in denying the defendant's motion to sequester the jury or grant his motion for a mistrial. A trial court's decisions should be reversed only if they were so grossly in error as to deprive the defendant of a fair trial. The juror to whom the remark was made was discharged and the remaining jurors were questioned and instructed.

Affirmed.

1. CRIMINAL LAW — SEPARATE TRIALS.

A criminal defendant does not have an automatic right to a trial separate from a codefendant, but the decision to grant a motion for a separate trial is left to the trial court's discretion; a defendant is entitled to a separate trial where it appears that the codefendant may testify to exculpate himself and incriminate the defendant.

2. CRIMINAL LAW — SEPARATE TRIALS.

A criminal defendant seeking a separate trial from a codefendant must make an affirmative showing of prejudice to overcome the strong policy in favor of joint trials; the defendant must show by affidavit that the defenses of the defendants are inconsistent and antagonistic.

.

3. CRIMINAL LAW — WITNESSES — CODEFENDANTS.

  Criminal codefendants may not be compelled to testify against their will even if tried separately.

4. CRIMINAL LAW — JOINT TRIALS — APPEAL.

  The Court of Appeals will review a joint trial for a miscarriage of justice even where none of the defendants moved for a separate trial in the lower court.

5. CRIMINAL LAW — JOINT TRIALS — NEW TRIAL.

  A criminal defendant tried jointly with a codefendant should not be entitled to a new trial on the basis of the codefendant's antagonistic theory of the case where the codefendant's theory did not deny the defendant a fair trial and only the prosecuting attorney submitted evidence that the defendant committed the crime.

6. CRIMINAL LAW — CROSS-EXAMINATION.

  The scope of cross-examination of a witness is left to the trial court's discretion, limited by constitutional considerations.

7. VENUE — CRIMINAL LAW — PRETRIAL PUBLICITY.

  The denial of a motion for a change of venue is within a trial court's discretion; motions for a continuance and for a change of venue should be granted where there is a reasonable likelihood that prejudicial pretrial publicity would prevent a fair trial.

8. VENUE — CRIMINAL LAW — PRETRIAL PUBLICITY.

  The existence of pretrial publicity does not by itself require a change of venue; if jurors can lay aside their impressions or opinions and render a verdict based on the evidence presented in court, a change of venue is not necessary.

9. VENUE — CRIMINAL LAW — PRETRIAL PUBLICITY.

  A defendant, in order to be entitled to a change of venue, must demonstrate that there is a pattern of strong community feeling or bitter prejudice against him and that the publicity is so extensive and inflammatory that jurors could not remain impartial when exposed to it.

10. CRIMINAL LAW — JURY — DISQUALIFICATION OF JURORS.

  Jurors in a criminal trial who have heard or read of the case, without more, are not disqualified as jurors, and their inclusion does not deny the defendant a fair trial; a juror who has formed an opinion may not be challenged for cause providing

the opinion is not positive in character and he may render an impartial verdict.

11. Venue — Voir Dire — Peremptory Challenges.

A defendant's failure to exhaust his peremptory challenges during voir dire does not operate as a waiver of his right to object to venue.

12. Criminal Law — Jury — Sequestration of Jurors.

A determination of whether a jury should be sequestered is left to the trial court's discretion and an affirmative showing of prejudice is necessary to show that the trial court abused its discretion.

13. Criminal Law — Mistrial.

The decision to grant a motion for a mistrial is left to the trial court's discretion and the trial court's decision should be reversed only if the decision was so grossly in error as to deprive the defendant of a fair trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett),* for defendant on appeal.

Before: V. J. Brennan, P.J., and Gribbs and C. J. Hoehn,* JJ.

Per Curiam. Following a jury trial, defendant, Robert Edward Partee, was found guilty as charged of first-degree murder, MCL 750.316; MSA 28.548, and felony-firearm, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to the mandatory consecutive prison terms of two years for felony-firearm and life for first-degree murder. He appeals as of right.

Defendant's convictions arose out of events on

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

July 18, 1979, at the Democratic Club, a private club in Detroit. The events culminated in the murder of three people and their subsequent decapitations. On appeal, defendant first claims that the trial judge abused his discretion in denying his motions for a severance from his codefendants.

A defendant does not have an automatic right to a trial separate from his codefendants. The decision to grant a motion for separate trials is left to the trial court's discretion. *People v Kramer,* 103 Mich App 747; 303 NW2d 880 (1981); *People v Wright (On Remand),* 99 Mich App 801; 298 NW2d 857 (1980), *lv den* 410 Mich 854 (1980); MCL 768.5; MSA 28.1028. In *People v Hurst,* 396 Mich 1; 238 NW2d 6 (1976), the Supreme Court held that a defendant is entitled to a separate trial when it appears that the codefendant may testify to exculpate himself and incriminate the defendant. In *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976), the Supreme Court held that the defendant must make an affirmative showing of prejudice to overcome the strong policy in favor of joint trials. The defendant must show by affidavit that the defenses of the defendants are inconsistent and antagonistic. A conclusory statement by way of affidavit is insufficient. *People v Smith, supra; People v Carroll, supra.*

In the present case, defendant's motion for severance stated that defendant "may assert defenses which are inconsistent with the defenses of other individual codefendants", that defendant "may take the stand in his own defense", and that defendant "may * * * call certain or all his codefendants in order that they may be able to testify in his behalf". We find that these statements do not constitute an "affirmative showing" of antagonistic and inconsistent defenses. See *People v*

*American Medical Centers of Michigan, Ltd,* 118 Mich App 135, 145-146; 324 NW2d 782 (1982). Even if tried separately, codefendants cannot be compelled to testify against their will. *People v Merritt,* 396 Mich 67, 84, fn 18; 238 NW2d 31 (1976). Defendant's motion was insufficient to require a severance.

Notwithstanding the insufficiency of the motion, defendant's claim must still be discussed. This Court will review a joint trial for a miscarriage of justice even when no motion for separate trials is made below. *People v Cochran,* 84 Mich App 710; 270 NW2d 502 (1978), *sentence vacated* 407 Mich 934 (1979); *People v Dunlap,* 87 Mich App 528; 274 NW2d 62 (1978).

It is clear that defendant and his codefendants did not present to the jury contradictory or antagonistic defenses. Defendant did not present any evidence whatsoever. The codefendants' defenses did not implicate defendant in any way. The only antagonism arose when the trial court read to the jury the defendants' theories of the case. The codefendants' theory was that defendant committed the murders while the codefendants were merely present. Defendant's theory was that the prosecution had failed to prove its case beyond a reasonable doubt.

We find that the codefendants' antagonistic theory of the case did not deny defendant a fair trial. Defendant was not forced to defend himself from evidence on two fronts. Only the prosecutor submitted evidence that defendant committed the crime. We cannot say that the codefendants' theory of the case necessitates a new trial. See *People v McGilmer,* 96 Mich App 433; 292 NW2d 700 (1980).

Defendant next argues that a severance should

have been granted, and his right to cross-examine witnesses against him was violated, because the trial court refused to allow him to cross-examine a criminal prosecution witness about the murders of John "Dad" Mays and Washington Wilson by Mickey Welton at the direction of a codefendant. Defendant argues that, because the witness was present when her boyfriend, Welton, killed people at the direction of a codefendant she had a reason to be biased against defendant.

The scope of cross-examination is left to the trial court's discretion. *People v Bouchee,* 400 Mich 253; 253 NW2d 626 (1977). That discretion, however, is limited by constitutional considerations. In *Davis v Alaska,* 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974), the Supreme Court held that under certain circumstances a defendant's right to cross-examine witnesses overrides the evidentiary policies of a state.

In *Davis,* the defendant sought to cross-examine a crucial prosecution witness by showing that the witness was on juvenile probationary status. That line of questioning was intended to reveal a possible bias. An Alaska statute barred the introduction of such evidence to preserve the confidentiality of juvenile adjudications. The Court held that the prior conviction of a witness was a general attack on credibility and could, on the facts of the case, reveal the bias or ulterior motives of a witness. Noting that the partiality of the witness is "always relevant", the Court concluded that the state's interest in protecting juvenile violators had to fall in the face of the defendant's Sixth Amendment challenge.

In the present case, the trial court allowed defendant to establish that the witness was present when Welton killed Mays. Also, the witness

was allowed to testify that Welton received an automobile and drugs for the murder.

The holding in *Davis* does not alter the rules of logical relevancy. *People v Arenda,* 416 Mich 1; 330 NW2d 814 (1982). The prosecution's theory of the case was that defendant murdered at the direction of a codefendant. That a codefendant ordered killings in the past is simply irrelevant to defendant's guilt or innocence in the present case. The only evidence produced was to the effect that the witness did not participate in the killings, her possible bias due to a potential prosecution could not be an issue. The trial court properly limited the scope of cross-examination.

Defendant next asserts that the trial court erred in denying his motion for a change of venue or for a continuance. Defendant also argues that the amount of pretrial publicity denied him a fair trial.

The denial of a motion for a change of venue is within the trial court's discretion. *People v Swift,* 172 Mich 473; 138 NW 662 (1912); *People v Clay,* 95 Mich App 152; 289 NW2d 888 (1980), *lv den* 409 Mich 857 (1980). In *Sheppard v Maxwell,* 384 US 333; 86 S Ct 1507; 16 L Ed 2d 600 (1966), the Supreme Court held that motions for continuances and for changes of venue should be granted when there is a "reasonable likelihood" that prejudicial pretrial publicity will prevent a fair trial.

"The existence of pretrial publicity does not by itself require a change of venue. *Murphy v Florida,* 421 US 794; 95 S Ct 2031; 44 L Ed 2d 589 (1975). If jurors can lay aside their impressions or opinions and render a verdict based on the evidence presented in court, a change of venue is not necessary. *Irvin v Dowd,* 366 US 717, 722-723; 81 S Ct 1639; 6 L Ed 2d 751 (1961); *Swift, supra,* 481-482; *People v Dixon,* 84 Mich App 675, 679;

270 NW2d 488 (1978). For a change of venue to be granted the defendant must demonstrate that there is a pattern of strong community feeling or bitter prejudice against him, and the publicity must be so extensive and inflammatory that jurors could not remain impartial when exposed to it. *Clay, supra,* 160; *Collins, supra,* 263." *People v Nixon,* 114 Mich App 233, 241; 318 NW2d 655 (1982).

In *People v Jenkins,* 10 Mich App 257, 261; 159 NW2d 225 (1968), *lv den* 381 Mich 757 (1968), this Court made the following comments:

"Jurors who have heard of or have read of the case, without more, are not disqualified as jurors, and their inclusion does not deny defendant a fair trial. See *People v Quimby,* 134 Mich 625 (1903); *People v Schneider,* 309 Mich 158 (1944); *People v Dailey* [6 Mich App 99 (1967)], *supra.* A juror who has formed an opinion may not be challenged for cause, providing the opinion is not positive in character, and he may render an impartial verdict. CL 1948, § 768.10 (Stat Ann 1958 Rev § 28.1033). In this case, all jurors who sat stated that they had no fixed opinion as to the guilt or innocence of the accused and that they could render a fair and impartial verdict."

In *People v Prast,* 105 Mich App 744, 749; 307 NW2d 719 (1981), *vacated* 114 Mich App 469; 319 NW2d 627 (1981), this Court considered the following factors from *People v Collins,* 43 Mich App 259; 204 NW2d 290 (1972), *lv den* 391 Mich 798 (1974), *cert den* 419 US 866 (1974), in determining whether an impartial jury had been selected in the face of extensive pretrial publicity:

"1. Jury selection occurred several months after the majority of media coverage.
"2. The trial judge permitted meticulous voir dire questioning, after which defense counsel chose not to

exercise remaining peremptory challenges and stated 'we have a jury'.

"3. The trial itself was not accompanied by extensive media coverage.

"4. No 'strong community feeling' or prejudice against defendant was perceived.

"5. The record of trial discloses no bias against defendant."

In the present case, the verdict in a related case occurred during jury selection and there was much media coverage. However, as in *Collins,* the trial court permitted "meticulous" and extensive voir dire questioning. Initially, the 400 prospective jurors filled out questionnaires. Individual jurors were then subjected to a detailed examination by the attorneys. We agree with defendant that the failure to exhaust peremptory challenges does not waive an objection to venue. *People v Stockard,* 391 Mich 481; 219 NW2d 68 (1974). However, the fact that that defendant exercised only 15 of his 20 challenges suggests that the defendant was able to impanel a satisfactory jury.

Finally, the record at trial discloses no bias against the defendant. All jurors, save one, had heard of the triple-beheading murders. However, only one of the jurors who ultimately deliberated had ever heard of defendant. We conclude that the defendant was not denied a fair trial.

Defendant's final claim is that reversal is warranted because the trial court denied his pretrial motion to sequester the jury and because the trial court excused a juror after a remark was made and did not grant the defendant's motion for a mistrial.

Whether the jury should be sequestered is left to the trial court's discretion. An affirmative showing of prejudice is necessary to show that the trial

court abused its discretion. *People v Nick,* 360
Mich 219; 103 NW2d 435 (1960); *People v Williams,* 78 Mich App 737; 261 NW2d 189 (1977), *lv
den* 403 Mich 818 (1978). The decision to grant a
motion for mistrial is also left to the trial court's
discretion. *People v Burns,* 118 Mich App 242; 324
NW2d 589 (1982). The trial court's discretion will
be reversed only if the decision was so grossly in
error as to deprive the defendant of a fair trial.
*People v Marsh,* 108 Mich App 659; 311 NW2d 130
(1981).

In the present case, during a lunch break, a man
with whom one of the jurors had once worked
called to the jurors, "Frank, let the guy go." The
trial court questioned the man and the juror. The
trial court concluded that the remark was made
innocently, and in jest, a conclusion with which on
this record we must agree, but decided to discharge the juror for the sake of objective appearance. The remaining jurors were then questioned
and instructed.

Defendant cites *People v Levey,* 206 Mich 129;
172 NW 427 (1919), as authority that the trial
court abused its discretion in denying the motion
for mistrial. There, the trial court, upon being
informed that a juror had been approached, simply
asked the foreman whether the incident would
influence the jury. The Supreme Court reversed
the defendant's conviction because no inquiry was
made of the jurors. In the present case, the court
questioned the juror who was approached, the man
who approached the juror, and finally, the remaining jurors. *Levey* is distinguishable. We find that
defendant's claim, individually or in combination
with the other claims of error, does not require
reversal.

Affirmed.